## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ZINA B. NODD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-00598-CG-N |
| | ) | |
| INTEGRATED AIRLINE SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court are the "Motion to Dismiss Plaintff's [sic] Amended Complaint Counts Three and Four" (Doc. 18), the "Motion to Dismiss Count Five (in Part) for Lack of Subject Matter Jurisdiction" (Doc. 20), and briefs in support of both motions (Docs. 19, 21) filed by the Defendant, Integrated Airline Services, Inc. ("IAS"). The Plaintiff, Zina B. Nodd ("Nodd"), has timely filed responses (Docs. 23 – 24) in opposition to the motions to dismiss. Contemporaneous with her responses, Nodd also filed a motion for leave to file a second amended complaint under Federal Rule of Civil Procedure 15(a)(2) (Doc. 25). IAS has filed a response (Doc. 26) in opposition to the motion for leave to amend, and Nodd has timely filed a reply (Doc. 29) to the response.

The motions to dismiss (Docs. 18, 20) and the motion for leave to amend (Doc. 25) have been taken under submission and are ripe for adjudication. (*See* Docs. 22, 27). These motions have been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and

Federal Rule of Civil Procedure 72(b)(1). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Nodd's motion for leave to file a second amended complaint (Doc. 25) be **GRANTED** and that IAS's motions to dismiss (Docs. 18, 20) be **DENIED as moot**.

## I.      Applicable Background

Nodd initiated this action on December 5, 2013, by filing *pro se* a complaint (Doc. 1) alleging claims against IAS under 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"), for alleged unlawful discrimination "based on her race, sex,[ and] religion," as well as unlawful retaliation. (*See* Doc. 1). On April 7, 2014, Nodd's current counsel of record entered his appearance in this action. (Doc. 7). On June 6, 2014, IAS filed a motion to dismiss Nodd's complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. 12). On June 9, 2014, Nodd filed her Amended Complaint (Doc. 15), currently the operative pleading in this action;[1] accordingly, the first motion to dismiss (Doc. 12) was declared moot.[2] (Doc. 17).

---

[1] As the Amended Complaint was filed within 21 days of service of IAS's Rule 12(b) motion, and because Nodd had not previously amended as a matter of course, Nodd's Amended Complaint was properly filed under Federal Rule of Civil Procedure 15(a)(1)(B).

[2] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' " *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)). *See also, e.g., Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

Per the allegations in the Amended Complaint, IAS is a business providing cargo-handling services at Brookley Field in Mobile, Alabama, for various carriers with terminals at that location. (Doc. 15 at 2, ¶ 2). Nodd was first hired by IAS in May 2006, has been employed with IAS as a Mail Handler Supervisor since 2008 at its Brookley Field location, and is the only female supervisor employed at that location. (*Id.* at 1-2, ¶¶ 1, 4). Nodd stated that her Amended Complaint was being filed "to more clearly set out her claims for relief and the facts upon which her claims are based…" (*Id.* at 1). Nodd asserted that she "is seeking principally declaratory and injunctive relief, back pay and compensatory and punitive damages, and other relief to redress discrimination in employment on the basis of her sex and retaliation" under both Title VII and § 1981. (*Id.*).

The Amended Complaint alleges five causes of action against IAS:

1. Count One – retaliation in violation of Title VII by reducing Nodd's work hours after her "complaints of discrimination;"

2. Count Two – retaliation in violation of Title VII by suspending Nodd without pay because she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC");

3. Count Three – retaliation in violation of § 1981 by reducing Nodd's work hours after her "complaints of discrimination;"

4. Count Four – retaliation in violation of § 1981 by suspending Nodd without pay because she filed a Charge of Discrimination with the EEOC; and

5. Count Five – "unlawful sex discrimination" in violation of Title VII by "reducing [Nodd's] work hours, suspending her without pay, and denying her the same terms, conditions and privileges of employment as male supervisors…"

(*Id.* at 7-8).

IAS asserts that Counts Three and Four of the Amended Complaint are due to be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted because § 1981 only applies to claims based on racial discrimination and does not cover claims for sex discrimination. (*See* Docs. 18 – 19). IAS asserts that Count Five is due to be dismissed in part under Rule 12(b)(1) for lack of subject matter jurisdiction because Nodd failed to exhaust her EEOC administrative remedies with regard to her claim that IAS discriminated against her on the basis of her sex by "suspending her without pay[] and denying her the same terms, conditions and privileges of employment as male supervisors…" (*See* Docs. 20 – 21).

While Nodd has responded (Docs. 23 – 24) in opposition to the arguments in IAS's motions to dismiss, she has also filed a motion for leave to file a second amended complaint (Doc. 25) "so as to clarify several factual statements made that may contribute to a lack of understanding of Plaintiff's claims in this case."[3] (Doc. 25 at 1). In its response in opposition to the motion to amend, IAS asserts that leave to file a second amended complaint should be denied because 1) amendment

---

[3] Because Nodd has already amended her complaint once as a matter of course under Federal Rule of Civil Procedure 15(a)(1), and because IAS has not consented in writing to the filing of her proposed second amended complaint, Nodd must seek leave of court to further amend her complaint.

would be futile, for the reasons set forth in its pending motions to dismiss, and 2) "due to bad faith, dilatory motives, [Nodd's] rejection of a previous opportunity to amend which caused unnecessary expense to IAS, and her repeated failure to cure deficiencies." (Doc. 26).

## II.     Analysis

### a.     Rule 15(a)(2) Motion to Amend Complaint

"After a party has amended its pleading once as a matter of course, the party may amend its pleading only with the opposing party's written consent or with the court's leave." *Spaulding v. Poitier*, 548 F. App'x 587, 593-94 (11th Cir. 2013) (citing Fed. R. Civ. P. 15(a)(2)), *cert. denied*, 134 S. Ct. 1880 (2014)  District courts may properly deny leave to amend when an amendment would be futile." "The decision whether to grant leave to amend a complaint is within the sole discretion of the district court.  Rule 15(a), however, limits the court's discretion by mandating that 'leave shall be freely given when justice so requires.' " *Laurie v. Ala. Court of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001) (*per curiam*) (quoting *Halliburton & Assoc. v. Henderson, Few & Co.*, 774 F.2d 441 (11th Cir. 1985)). "There must be a substantial reason to deny a motion to amend." *Id.*  "A district court need not…allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252

F.3d 1161, 1163 (11th Cir. 2001) (*per curiam*) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## 1. Futility of Amendment

A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.' " *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). In its opposition to the motion to amend, IAS asserts that leave to amend should be denied as futile for the reasons it has already argued in its motions to dismiss. (*See* Doc. 26 at 1). Specifically, IAS argues: "[I]t would be futile to allow Ms. Nodd to attempt to replead claims over which this Court lacks subject matter jurisdiction due to failure to exhaust Title VII administrative remedies or which involve conduct which is not unlawful under Section 1981 as set forth in Defendant's pending motions to dismiss Counts Three, Four, and Five." (*Id.*).

IAS has moved for dismissal of Counts Three and Four of the Amended Complaint, which assert claims for unlawful retaliation under § 1981.[4] IAS argues that Nodd's Amended Complaint alleges claims based only on gender discrimination and that gender discrimination (and related claims for retaliation) are not cognizable under § 1981, which only concerns racial discrimination. *See Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997) ("It

---

[4] Title "42 U.S.C. § 1981 encompasses claims of retaliation." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). *Accord Bryant v. Jones*, 575 F.3d 1281, 1301 (11th Cir. 2009). *See also Tucker v. Talladega City Sch.*, 171 F. App'x 289, 295 (11th Cir. 2006) ("§ 1981 encompasses a cause of action for retaliation. This cause of action includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination.").

is well-established that § 1981 is concerned with *racial* discrimination in the making and enforcement of contracts."); *Harris*, 846 F. Supp. 2d at 1240 ("[U]nlike Title VII, § 1981 claims are limited to *race* discrimination." (citing *Little*)); *Williams v. Wal-Mart Associates Inc.*, No. 2:12-CV-03821-AKK, 2013 WL 979103, at *3 (N.D. Ala. Mar. 8, 2013) ("[A] plaintiff cannot maintain discrimination claims under § 1981 based on gender or religion. *See Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960–61 (11th Cir. 1997). Accordingly, Williams may only allege a § 1981 race-based discriminatory discharge claim."). In opposing Nodd's motion to amend, IAS argues that her proposed amendment does not cure this defect.

Paragraph 9 of both the Amended Complaint and the proposed amended complaint states: "Plaintiff complains that as a supervisor, she is not treated the same as **male** supervisors by the defendant, and following her complaints about the difference in treatment she was retaliated against by defendant with a reduction [sic] her work hours and a suspension without pay." (Doc. 15 at 3; Doc. 25-1 at 3 (emphasis added)). By her own admission, then, Nodd appears to attribute any unlawful retaliation solely towards her complaints of gender discrimination.

However, generously reading the proposed second amended complaint, the undersigned finds that Nodd has alleged sufficient facts indicating that retaliatory action occurred after making complaints of racial discrimination in addition to gender discrimination so as to support causes of action for retaliation under § 1981. Specifically, Nodd has alleged, *inter alia*:

10. Specifically, in mid-December 2012, plaintiff complained to Station Manager Tucker about being discriminated against due to **her race, color** and sex. Plaintiff advised Mr. Tucker that he failed to support her when she would discipline the male employees, that the male employees were permitted to make vulgar and offensive statement about female workers, that he continually failed or refused to provide her a company email account which adversely impacted her ability to carry out all of her responsibilities as a supervisor, and that she (plaintiff) generally was not getting the support Tucker provided to male supervisors.

11. Within a week of her complaint to Mr. Tucker, plaintiff's work schedule was reduced by over 30 hours per pay period, under the guise of a reduction in the mail volume. However, plaintiff was the only employee whose work schedule suffered such a substantial reduction, and within 60 days of this punitive act, Mr. Tucker hired two new male employees without first restoring Plaintiff's hours.

…

15. In fact, from in or about 2010 thru 2013, plaintiff had complained to Regional Manager Mark Walton about issues relating to her supervisor, Willie Tucker, including acts of theft, falsification of company safety reports by signing the names of employees on the reports without their knowledge or consent. **Plaintiff also complained about having to work from home without pay, unlike the white supervisor who served in Plaintiff position before her promotion.** All to no avail. Mr. Walton would visit the Mobile location and meet with Mr. Tucker and the male supervisor, Mr. Harold Brewer, and then depart without any communication with plaintiff.

16. Following the substantial reduction in her work hours, and the hiring of two additional male employees, plaintiff visited the local EEOC office to file a complaint against the defendant. Plaintiff initial visit to the EEOC occurred on April 22, 2013, during which she was interviewed and completed an intake questionnaire. By Notice dated May 2, 2013, the Defendant was advised of Plaintiff's complaint to the EEOC, and shortly thereafter Mr. Walton finally met with plaintiff.

17. During plaintiff's brief meeting with Mr. Walton on or about May 22, 2013, she was told that she needed to communicate with Mr. Tucker, and she needed to follow his instructions.

18. One day following the meeting with Mr. Walton, plaintiff emailed him a written statement setting out some of the problems she was having with Mr. Tucker, including the forced reduction in her work hours, and being required to perform work "off of the clock" without pay.

19. **Unlike the white supervisor prior to Plaintiff**, and her present male counterpart, plaintiff was directed to call FedEx prior to reporting to work, so as to determine the arrival time of the cargo, and then to call all shift employees with their reporting time for work. This was ordered to be done while plaintiff was at home, but **former white counterpart**, and her present counterpart, Mr. Brewer, was permitted to arrive at work, clock in, and then determine the work schedule for his shift.

20. Mr. Walton failed to respond to plaintiff's written complaints, and on May 31, 2013, plaintiff signed off on her first Charge of Discrimination, numbered 0630, alleging among other claims, retaliation by defendant due to her earlier complaint of discrimination.

21. On July 5, 2013 Mr. Tucker and supervisor Harold Brewer concocted a complaint against plaintiff alleging that she had become angry and threw a radio across a room while cursing them. And on July 13, 2013, Harold Brewer and another employee punctured the tires on plaintiff's vehicle while she was picking up the mail at FedEx.

22. Plaintiff complained to Mr. Walton once again because of her feeling that things were getting out of hand. But again, Mr. Walton refused to take any action, or even respond to plaintiff's complaints.

23. However, about two days later, defendant suspended plaintiff without pay for seven days due to her failure to discipline an employee who had failed to clean up at the close of his shift.

(Doc. 25-1 at 3-6 (emphasis added)).

Admittedly, these allegations of complaints of racial discrimination are greatly outnumbered by, and sprinkled among, allegations of disparities between the treatment of Nodd and her <u>male</u> coworkers. However, accepting Nodd's allegations as true, as the Court must at this stage, they establish that Nodd's

reduction in work hours and suspension occurred after both her complaints to supervisors of perceived racial discrimination to supervisors and her filing of discrimination charges with the EEOC.[5]  As such, Nodd's claims for retaliation under § 1981 in the proposed second amended complaint are not futile.

IAS has also moved to dismiss Count Five, in part, for lack of subject matter jurisdiction, asserting that Nodd has failed to administratively exhaust some of the claims contained within that count.  Initially, the undersigned notes that a failure to exhaust Title VII administrative remedies does not, as IAS suggests, deprive this Court of subject matter jurisdiction over Title VII claims.  It is true that "[t]his circuit has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). *See also, e.g.*, *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (*per curiam*) ("Prior to filing a Title VII action, however, a plaintiff first must file a charge of discrimination with the EEOC. The purpose of this exhaustion requirement is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." (citation and quotation omitted)).  However, Eleventh Circuit law is also clear that the conditions precedent to a Title VII action, "generally found in 42 U.S.C. s 2000e-5[,]" "are not jurisdictional prerequisites, which if not satisfied deprive federal district courts of

---

[5] "A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) "there was a causal connection between the protected activity and the adverse action."  *E.g.*, *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).

subject matter jurisdiction." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1009-10 & n.7 (11th Cir. 1982). *See also, e.g., id.* at 1010 ("[T]he conditions precedent to a Title VII action are not jurisdictional.") & 1011 ("[T]he failure to satisfy the conditions precedent to a Title VII action does not deprive the court of subject matter jurisdiction."); *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983) ("*Jackson* mandates that all Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements."); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1230 n.7 (N.D. Ala. 2012) ("Exhaustion of administrative remedies in Title VII cases functions as an administrate precondition to suit, rather than a jurisdictional prerequisite that would trigger application of Rule 12(b)(1).").[6]

---

[6]     IAS has cited *Wong v. Master Cleaners, Inc.*, Civil Action No. 05-0416-CG-M, 2005 WL 2094842 (S.D. Ala. Aug. 25, 2005), for the proposition that Title VII administrative remedies implicate subject matter jurisdiction. There, the Court stated: "No evidence, allegation, or argument has been submitted to support a finding that plaintiff filed an EEOC charge prior to the filing of this suit. 'When a Plaintiff fails to exhaust administrative remedies, the federal courts lack subject matter jurisdiction over the claims, and the claims must be dismissed.' " *Wong*, 2005 WL 2094842, at *2 (quoting *Woods v. Gen. Motors Acceptance Corp.*, Civil Action No. 97–0502–CB–S, 1998 WL 757966, at *3 (S.D. Ala. May 26, 1998) (citations and internal quotations omitted)).

     *Woods v. General Motors Acceptance Corp.*, in support of the assertion quoted in *Wong*, cited two out-of-circuit opinions and *Grier v. Secretary of Army*, 799 F.2d 721, 724 (11th Cir. 1986). *See* 1998 WL 757966, at *3. *Grier* acknowledged that "the timeliness requirement[ for filing an EEOC charge] does not erect a jurisdictional prerequisite to suit," 799 F.2d at 724 (citing *Zipes*, 455 U.S. at 397), but held that "this does not suggest that parties complaining of federal employment discrimination in violation of Title VII should

11

*Jackson* went on to state:

> Our holding does not mean that plaintiffs no longer must prove that they have satisfied the conditions precedent to a Title VII action. To the contrary, a plaintiff must generally allege in his complaint that "all conditions precedent to the institution of the lawsuit have been fulfilled." Fed. R. Civ. P. 9(c). If the defendant doubts the veracity of the plaintiff's allegation, in whole or in part, then the defendant may deny "specifically and with particularity" that the preconditions have not been fulfilled. *Id.* The plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied. If, however, the defendant does not deny the satisfaction of the preconditions specifically and with particularity, then the plaintiff's allegations are assumed admitted, and the defendant cannot later assert that a condition precedent has not been met.

---

ever be waived into court without filing any initial charge with the agency whose practice is challenged." *Id.* (quotation omitted).

    *Grier* dealt with a federal employee alleging Title VII discrimination against a government agency and her failure to "first seek relief in the agency that has allegedly engaged in discrimination." Eleventh Circuit "case law establishes that '**[a] federal employee** must pursue and exhaust her administrative remedies as a **jurisdictional prerequisite** to filing a Title VII action'..." *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006) (quoting *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999)) (emphasis and ellipsis added). For federal employees, administrative exhaustion includes first "fil[in]g a formal complaint with the agency that allegedly discriminated against" the employee. *Id.* at 1262 (citing 29 C.F.R. § 1614.106(a). In that context, " 'the purpose of exhaustion is to give the [employer ]agency the information it needs to investigate and resolve the dispute between the employee and the employer.' " *Id.* at 1263 (quoting *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)) (alteration added).

    Nodd is not alleged to be a federal employee. Moreover, it is undisputed that Nodd has in fact filed EEOC charges related to this action. It is the scope of those charges that is at issue. Even if the exhaustion jurisdictional requirement for federal employees applied here, "[t]o determine whether an employee failed to exhaust his administrative remedies, [a court] considers whether 'the complainant made a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her.' " *Id.* (quoting *Wade*, 796 F.2d at 1376)

    While this may simply seem like so much procedural nitpicking, the undersigned has addressed this issue to dispel any misunderstanding that suggests a district court has a duty, as it normally does in matters implicating subject matter jurisdiction, to address *sua sponte* whether administrative remedies have been properly exhausted in Title VII cases against non-federal employers. As *Jackson* makes clear, the duty to affirmatively raise such issues rests squarely with the Title VII defendant in such cases. The undersigned notes that the defendant private employers in both *Wong* and *Woods* affirmatively raised the issue of failure to exhaust administrative remedies; thus, the Court properly addressed them in those cases.

678 F.2d at 1010 (some citations omitted).

As noted by *Jackson*, under Federal Rule of Civil Procedure 9(c), "it suffices to allege generally that all conditions precedent have occurred or been performed." However, Nodd's Amended Complaint (Doc. 15) does not even meet this minimal pleading standard, as nowhere within does she allege that she has satisfied her conditions precedent to bringing her Title VII claims.[7]   On the other hand, Nodd's proposed second amended complaint adds, *inter alia*, a paragraph stating: "Plaintiff has filed two complaints with the EEOC alleging discrimination based on race, sex and retaliation, and she received her Notice of Rights on both charges on September 6, 2013, and filed her initial complaint within 90 days of her receipt of those Notices of Rights.  Therefore, Plaintiff has exhausted her administrative remedies."  (Doc. 25-1 at 7).   As such, in this regard Nodd's proposed second amended complaint is not futile, as it would save her Title VII claims from dismissal for failure to plead generally that all conditions precedent to bringing them have been satisfied.  *See* Fed. R. Civ. P. 9(c); *Jackson*, 678 F.2d at 1010.  However, IAS asserts that some of the claims asserted in Count Five of the proposed second amended complaint would still be subject to dismissal for failure to exhaust Title VII administrative remedies.

---

[7]    While the Amended Complaint does allege that she filed EEOC charges, these allegations appear to be included only to support Nodd's claims for retaliation, and no allegations regarding the outcomes of those charges have been made.

Nodd's initial, *pro se* Complaint did allege that her EEOC administrative remedies had been exhausted and even contained an EEOC right-to-sue letter as an attachment. (*See* Doc. 1 at 3-4).  However, the Amended Complaint supersedes the initial Complaint, and all allegations in the initial Complaint are deemed abandoned.  *See supra*, n.2.

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a 'matter[ ] in abatement, and ordinarily [does] not deal with the merits.' " *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 at 78 n.15 (3d ed. 2004)). "Accordingly, exhaustion should be decided on a Rule 12(b) motion to dismiss…" *Id.* at 1375. "That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic." *Id.* As *Bryant* explained,

> [w]hen a court treats a motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion. For judges to resolve factual disputes where the motion to dismiss is not an adjudication on the merits is not uncommon. For instance, it is well-established that a judge may make factual findings about subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss. Likewise, a judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process. Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

*Id.* at 1376 (citations, quotations, and footnotes omitted).[8] [9]

---

[8] Admittedly, *Bryant* addressed the exhaustion requirement of the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a). However, the Eleventh Circuit has applied *Bryant*'s principles (albeit in unpublished decisions) to Title VII exhaustion requirements for both federal (*see Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424-26 (11th Cir. 2010) (*per curiam*)) and private-sector employees (*see Duble v. FedEx Ground Package Sys., Inc.*, No. 13-12749, 2014 WL 3631905, at *3 (11th Cir. July 24, 2014) (*per curiam*) (unpublished)).

IAS first asserts that Nodd's Count Five claim for discriminatory suspension without pay, allegedly occurring at some point after July 5, 2013, cannot be covered by either of the two EEOC charges Nodd alleges having filed in both the Amended Complaint and the proposed second amended complaint, as both were alleged to have been filed prior to the suspension (the first is alleged to have been filed on April 22, 2013, the second on May 31, 2013). *Compare* (Doc. 15 at 5-6 [Amended Complaint, ¶¶ 16, 20-23]) *with* (Doc. 25-1 at 4-6 [Proposed Second Amended Complaint, ¶¶ 16, 20-23).

In response to this argument, Nodd has produced a copy of another EEOC charge of discrimination filed by her (Charge No. 425-2013-00924) dated August 23, 2013. That charge claims race and sex discrimination, as well as retaliation, and asserts, *inter alia*: "On July 5, 2013, Willie Tucker (Black, Station Manager) wrote

---

[9]     Some courts have treated motions to dismiss for failure to exhaust Title VII administrative remedies as being brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See, e.g., Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1230 n.7 (N.D. Ala. 2012) ("Exhaustion of administrative remedies in Title VII cases functions as an administrate precondition to suit, rather than a jurisdictional prerequisite that would trigger application of Rule 12(b)(1)…As such, the court finds that it is more appropriately treated under the Rule 12(b)(6) failure to state a claim standard. (citing district court cases in support of second sentence)). "As a general rule, the district court must 'limit[ ] its consideration to the pleadings and exhibits attached thereto' when deciding a Rule 12(b)(6) motion to dismiss." *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008) (*per curiam*) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks omitted)). "If, on a motion under Rule 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). *See also Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984) ("The 12(b)(6) motion thus was converted into a summary judgment motion necessitating all the procedural safeguards of Rule 56.").
        *Bryant*, however, noted that "where…exhaustion is not adjudicated as part of the merits, it is **unlike a defense under Rule 12(b)(6)** for failure to state a claim, which is generally decided on the merits." 530 F.3d at 1377 n.12 (emphasis added).

me up stating I cursed and threw my radio. On July 15, 2013, Tucker suspended me for seven days without pay for not ensuring an employee completed his assigned tasks and not writing up the employee when I discovered the tasks were not complete. I believe I was written up and suspended because of my sex and because I filed an EEOC Charge." (Doc. 24-1). Moreover, a notice of this charge dated August 15, 2013, was sent to IAS by the EEOC. (Doc. 24-2). IAS does not dispute the authenticity of these documents. As such, Nodd has demonstrated that she properly filed an EEOC charge to cover her claim of discriminatory suspension without pay alleged in Count Five of both the Amended Complaint and the proposed second amended complaint. Thus, as to this claim, amendment is not futile.

Count Five of both the Amended Complaint and the proposed second amended complaint alleges, *inter alia*, that by "denying her the same terms, conditions and privileges of employment as male supervisors, [IAS] has engaged in unlawful sex discrimination against" Nodd in violation of Title VII. (Doc. 15 at 7-8; Doc. 25-1 at 8). One of these alleged examples of discrimination was "being required to perform work 'off of the clock' without pay." (Doc. 15 at 5, ¶ 18; Doc. 25-1 at 5, ¶ 18). Nodd provides the following factual allegations in her proposed second amended complaint to support her claim that she was discriminatorily forced to work "off the clock":

> Unlike the white supervisor prior to Plaintiff, and her present male counterpart, plaintiff was directed to call FedEx prior to reporting to work, so as to determine the arrival time of the cargo, and then to call all shift employees with their reporting time for work. This was ordered to be done while plaintiff was at home, but former white

counterpart, and her present counterpart, Mr. Brewer, was permitted to arrive at work, clock in, and then determine the work schedule for his shift.

(Doc. 25-1 at 5, ¶ 19).

IAS argues that Count Five cannot encompass Nodd's allegations of "being required to perform work 'off of the clock' without pay" (Doc. 15 at 5, ¶ 18; Doc. 25-1 at 5, ¶ 18) because her EEOC charges are "conspicuously silent regarding any allegations of 'being required to work "off of the clock" ' …unlike her alleged male counterpart." (Doc. 21 at 4). Thus, IAS argues, this claim has not been administratively exhausted.

In support of this argument, IAS has presented a copy of Nodd's May 31, 2013 EEOC charge (Charge No. 425-2013-00630), which contains the following allegation of particulars:

> I worked for the Respondent since May 2006 and most recently as a Supervisor/Mail Handler. In mid-December 2012, I complained of sex discrimination to Willie Tucker (Black, Station Manager) and the following week, he reduced my work days. In February 2013, I complained of race and sex discrimination to Janet Bahnsen (White, Human Resources Manager) and she took no action. My work days were decreased because of my race (Black), sex, and because of complained of race and sex discrimination.
>
> In mid-December 2012, I complained to Tucker about a comment made by Timothy Mack (Black, Mail Handler). Also, I complained to Tucker that I should have an email account and that I should be allowed to participate in conference calls with Mark Walton (White, Regional Manager). After my complaint, Tucker reduced my work days.
>
> I believe I was retaliated and discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 13-1).

In response to this argument, Nodd has produced what she represents to be a page from her reply (Doc. 24-4) to IAS's "Position Statement" responding to Nodd's May 31, 2013 EEOC charge. The reply is dated July 29, 2013, is stamped received July 31, 2013, and provides, in relevant part:

> Second, I never complained to Respondent about loss of my supervisor hours. My complaint was based on discrimination and retaliation due to the reduction of my hours from the morning shift and the hiring of Brandon Campbell. I **also complained to Mr. Tucker and Mr. Walton about getting at least 30 minutes clock in time to prepare for my shift instead of working unpaid task making calls off the clock.**

(Doc. 24-4, ¶ 2.(a); Doc. 24 at 2 (emphasis by Plaintiff)). Nodd also cites *Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277 (11th Cir. 2004), in which the Eleventh Circuit held, in relevant part:

> This Court further has noted that [Title VII ]judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate. []In light of the purpose of the EEOC exhaustion requirement, we have held that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Courts are nonetheless extremely reluctant to allow procedural technicalities to bar claims brought under Title VII. As such, this Court has noted that the scope of an EEOC complaint should not be strictly interpreted.

*Gregory*, 355 F.3d at 1279-80 (internal citations and quotations omitted).

Nodd asserts that "[n]ot only was Plaintiff's claim of having to work off the clock within the scope of the investigation into the difference in treatment she received versus the treatment received by male workers, this complaint was

actually made a part of the investigation by Plaintiff's Reply to the Position Statement." (Doc. 24 at 3).

The undersigned is not wholly convinced that Nodd's claims of discrimination regarding "off the clock" work could reasonably be expected to grow out of the initial May 31, 2013 charge of discrimination, as the particular facts alleged in that charge largely support claims for retaliation, with actual gender discrimination being alleged only in a conclusory fashion. However, EEOC regulations provide that "[a] charge may be amended…to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). As such, Nodd's reply to IAS's "Position Statement" could be considered an "amendment" clarifying or amplifying her allegations in the initial May 31, 2013 charge.

There is a problem, however, as Nodd has only submitted the first page of her reply, which contains no signature or verification. "The law is clear that to meet the requirements of Title VII, a charge has to be verified. A charge 'shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.' 42 U.S.C. § 2000e-5(b)." *Pijnenburg v. W. Georgia Health Sys., Inc.*, 255 F.3d 1304, 1307 (11th Cir. 2001) (citing *Vason v. City of Montgomery*, 240 F.3d 905 (11th Cir. 2001) (*per curiam*)). *See also Davis v. Valley Hospitality Servs., LLC*, 214 F. App'x 877, 879 (11th Cir. 2006) ("The district court correctly

granted Valley Hospitality's motion to dismiss the class-wide discrimination charges because the letter from Duncan and Brown's attorney did not comply with Title VII's charge and amendment requirements. The letter did not constitute a valid EEOC charge of discrimination because it was not verified and there was no effort made to amend it to include a verification. *See Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir. 2001) (*per curiam*). The letter did not validly amend the previously filed charge because it clearly sought to add new separate charges of class-wide discrimination instead of clarifying or amplifying the original allegations."). "[A] plaintiff's failure to verify her charge is fatal to her claims even if the EEOC issued a right to sue letter." *Dees v. Florida*, No. 4:10CV305/MCR/WCS, 2012 WL 662295, at *4 (N.D. Fla. Feb. 28, 2012) (citing cases). *See also Vason*, 240 F.3d at 907 (rejecting argument that "the EEOC in effect waived the verification requirement when it processed [the plaintiff's] unverified charge and issued a right to sue letter").

Upon consideration, the undersigned recommends overruling IAS's objection to amendment based on futility regarding Nodd's "off the clock" work claims of discrimination and allowing Nodd to file her proposed second amended complaint. As of now, it cannot satisfactorily be determined from the record whether those claims have in fact been administratively exhausted (and thus would be futilely alleged in the second amended complaint). After the second amended complaint is filed, should IAS determine that Nodd's reply to IAS's "Position Statement" did not

properly amend her May 31, 2013 EEOC charge to include her "off the clock" work claims, it may still file another Rule 12(b) motion to dismiss those claims.

Therefore, the undersigned **RECOMMENDS** that IAS's objection of futility to the motion for leave to file a second amended complaint be **OVERRULED**.

## 2. Other Reasons for Denying Amendment

IAS has also argued that amendment should not be allowed "due to bad faith, dilatory motives, [Nodd's] rejection of a previous opportunity to amend which caused unnecessary expense to IAS, and her repeated failure to cure deficiencies." (Doc. 26 at 1). IAS asserts that Nodd waited an unreasonable period of time before retaining an attorney in this action. Nodd's counsel then represented that he would file an amended complaint but did not do so initially, thus forcing IAS to retain counsel and expend "considerable attorneys' fees" responding to the initial complaint.

IAS has cited no authority indicating why any of this should be considered a "substantial reason" to deny amendment. "The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) (citing *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir. 1989) ("The mere passage of time, without anything more, is an insufficient reason to deny leave to amend."), *rev'd on other grounds*, 499 U.S. 530 (1990)). Moreover, Federal Rule of Civil Procedure 15(a)(1) gives a plaintiff a clear right to amend her complaint once as a

matter of course within 21 days of service of a Rule 12(b) motion to dismiss – therefore, IAS cannot reasonably argue that it could not have foreseen this possibility. The undersigned also notes that a scheduling order under Federal Rule of Civil Procedure 16(b) has not yet been entered, further hampering the Court's ability to deny leave to amend. *But see Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (holding " '[i]t is not an abuse of discretion for a district court to deny a motion for leave to amend **following the close of discovery, past the deadline for amendments, and past the deadline for filing dispositive motions**.' " (quoting *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002)) (emphasis added)).[10]

The Eleventh Circuit has already rejected the contention that leave to amend should be denied where the plaintiff files an amended complaint as a matter of course in response to an initial motion to dismiss, then moves to amend again after the defendant renews its motion to dismiss. *See Bryant*, 252 F.3d at 1163-64 ("The district court gave several reasons for its refusal to grant the plaintiffs leave to amend. First, the district court stated that the plaintiffs already had been 'given one opportunity to amend their complaint.' This assertion apparently refers to the plaintiffs' Amended Complaint, filed in response to the defendants' original motion to dismiss. Under Rule 15(a), an amendment may be made either as 'a matter of

---

[10] To the extent IAS complains that it has been forced by Nodd and her counsel to unreasonably expend attorneys' fees in filing unnecessary motions to dismiss, such concerns are more appropriately addressed in a properly-supported motion under 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

course' or 'by leave of court.' *See* Fed. R. Civ. P. 15(a). The Amended Complaint was filed as a matter of course, and until the renewed motion to dismiss came before the court, the plaintiffs had not asked for leave to amend. Therefore, it cannot be said that the plaintiffs already had been given an opportunity to amend or that the plaintiffs repeatedly had failed to cure deficiencies through previously allowed amendments." (footnote omitted)).

While IAS argues that Nodd has failed to correct deficiencies in her allegations despite repeated notice of these deficiencies provided by IAS in both its communications between counsel and its motions to dismiss, the Court has not previously had the opportunity to point out and address any of these claimed deficiencies. Thus, Nodd has not "repeatedly had failed to cure deficiencies through previously allowed amendments."[11] *Compare id.* at 1164 (holding that district court, in denying leave to amend and dismissing with prejudice for the stated reason that "the plaintiffs already had been given notice of the possible deficiencies in their complaint" and failed to correct those defects, abused its discretion because 1) district court's prior opinion, "[r]ather than indicating infirmities in the complaint,…created the exact opposite impression[,]" and 2) "once the defendants renewed their motion to dismiss, the plaintiffs responded with their first request for leave to amend, which the district court denied."), *with Friedlander v. Nims*, 755 F.2d 810, 811–12 (11th Cir. 1985) (stating that dismissal with prejudice was

---

[11] The undersigned notes that Nodd's Amended Complaint appears to have addressed at least some of IAS's perceived deficiencies. While IAS had initially moved to dismiss the initial complaint in its entirety, it only moves for partial dismissal of the Amended Complaint.

appropriate where **district court** gave 'specific and repeated warnings' that amendment was necessary).

Thus, it is recommended that IAS's remaining objects to the motion for leave to file a second amended complaint be **OVERRULED** and that the motion be **GRANTED**.

### b.    Motions to Dismiss

As the undersigned has recommended that Nodd be granted leave to file a second amended complaint, the undersigned further recommends that IAS's motions to partially dismiss the Amended Complaint (Docs. 18, 20) be **DENIED as moot**. *See supra*, n.2.

### III.    Conclusion

For the above-stated reasons, the undersigned **RECOMMENDS** that Nodd's motion for leave to file a second amended complaint (Doc. 25) be **GRANTED** and that, accordingly, IAS's motions to dismiss (Docs. 18, 20) be **DENIED as moot**.

Should this recommendation be adopted, it is further **RECOMMENDED** 1) that Nodd be required to file her proposed second amended complaint (Doc. 25-1) as the operative complaint in this action no later than seven (7) days from the date the recommendation is adopted, and 2) that responsive pleadings be filed within the time permitted by the Federal Rules of Civil Procedure.

### IV.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or

anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the **4**th day of **August 2014**.

                               */s/ Katherine P. Nelson*
                               **KATHERINE P. NELSON**
                               **UNITED STATES MAGISTRATE JUDGE**